**ORIGINAL**

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta
JUN 17 2005
LUTHER D. THOMAS, Clerk
By: Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

James D. Cunningham :

Plaintiff, :

V. : CIVIL ACTION NO. 1-04-cv-3427 TWT

Murriel M.Whitener, :
Shawn Whitener,
Whitener Limited Partnership, :
Gaye M. Whitener,
Whitener Management & Consulting, LLC, :
Whitener Enterprises, LLC,
Whitener Holdings, LLC, :
Whitener Investment Limited Partnership,
The Whitener Group, Inc., :
Anna Marie Dickerson,
Jim Alexander, :
Helen Lynch,
Jenny Pruitt Associates, :
Home Services of America, Inc.,
Berkshire Hathaway, Inc., :
Elaine Hayes,
David Thomas, :
Lee A. Finch,
REMAX International, Inc., :
REMAX of Georgia,
REMAX Greater Atlanta Commercial, LLC :
Garvis L. Sams, jr.,
Joel L. Larkin, :
Parks F. Huff,
Richard A. Harrah, :
Michael P. Pryor,
Sams Larkin & Huff, LLP, :
Scott Johnson, :

A JURY OF TWELVE PERSONS IS DEMANDED

Darryl R. Moss,
Seth Weissman, :
Christina Kearney,
Erin Chen, :
Jane Hedgepeth,
Quiona Blanks, :
Leigh M. Wilco,
Linda Bryant Curry, :
George E. Nowack, Jr.,
Weissman, Nowack, Curry & Wilco, P C, :
Scott A. Cochran,
Johnny A. Cochran, :
H. G. Snipes,
Cochran, Camp & Snipes, LLC, :
J Doe 1
:
Defendants.
:

## MOTION FOR COURT TO FORCE THE MANELY FIRM, P.C. TO PRODUCE PLAINTIFF'S FILE

PLAINTIFF HEREBY MOVES THIS COURT to force the Manely Firm, P.C. (the Firm) to provide Plaintiff with his file, in its entirety, inclusive of all documents and other items such as renderings, envelopes and tapes furnished to the Firm by Plaintiff; including but not limited to all extraneous notes and additions outside those materials provided by Plaintiff; all records of communications between the Firm and Plaintiff as well as with all others, including opposing counsel, this and other courts; all logs and notes, hand written as well as those entered by Firm

members on computer, fax or any other means; withholding nothing - the complete file.

## BRIEF IN SUPPORT

The Firm has a **repetitive history of "misplacing"** particular, pertinent parts of the file, and Plaintiff suspects the Firm may attempt to say it got "lost in the mail". **Because of this, Plaintiff deems it necessary to show the court the pattern of deceit** established by the Firm so as to convince the Court that the file has not been lost, but is intentionally being withheld from Plaintiff, by the Firm.

Plaintiff has consistently not only felt uncomfortable about the security of his materials, but is quite concerned about the nature of some particular materials that have been withheld from Plaintiff since March 25th, 2005; and the Firm's motivation for intentionally not making these available to Plaintiff, and indicating to Plaintiff that they could not be found.

Now, the entire file is being withheld from Plaintiff, and for no given reason. Particular, individual parts of this file were needed by Plaintiff for investigative purposes, but whenever Plaintiff tried to retrieve these, he was told by the Firm they could not be found.

Further, Plaintiff was deposed by Defendant's counsel on June 10th, in the Superior court cases Cunningham v. Smyrna 05-1-0095-42, 05-1-0094-42 and 05-1-

127-42 without benefit of legal representation [Rule 4.11] or file materials to refer to.

Plaintiff's first indication that the Firm was being deceitful about the file's whereabouts was late Friday afternoon, March 25th, right before the first Cunningham v. Smyrna hearing scheduled for 9:00 a.m. the following Monday the 28th.

One particular legal sized manila folder contained Plaintiff's materials relevant to the three Superior Court cases - stamped copies of his filings, mailed copies of the responsive filings sent to Plaintiff by opposing counsel, along with the notices sent to Plaintiff by the Court.

Mr. Manely called Plaintiff Friday afternoon, March 25th, 2005 to let him know he had just reviewed these items (he waited until two days before the first hearing to even bother reviewing the cases, and allowed no time to consult with Plaintiff on them, even though Plaintiff had asked Mr. Manely to do so, on numerous occasions). Mr. Manely only described the *original filings* as having been reviewed. **Plaintiff asked about the other items, and was told by Mr. Manely there was nothing else in the folder**. When Plaintiff insisted that there were indeed other items, and that they were of great import, Mr. Manely responded that he had torn through the folder, and there was nothing else in there (this folder enlarges to

approximately one or two inches in width when fully expanded, "tearing through" is not a function involved with determining its contents – simply turning it upside down over a desk would be sufficient to be able to examine the contents, in their entirety). Plaintiff reminded Mr. Manely these were very important documents, and that he had informed Mr. Manely that some of these items were originals with no copies, when he entrusted them to the Firm and had implored him to take great care with them. Mr. Manely reiterated that there was nothing other than Plaintiff's original filings in the folder.

The following Sunday night the 27th, at 8:50 p.m., Mr. Manely sent Plaintiff an email [Exhibit A]. Plaintiff, having retired for the evening, did not see it until the next morning, and only a short time before the hearing. Mr. Manely states he had come into his office to do some work, and now had discovered the "missing" contents of the folder (all but one important envelope). Where had these items been? They had been in the folder the whole time. Why was Mr. Manely unable to detect them previously? ***Because they were in envelopes.*** Mr. Manely explained that he removes items *he* receives from their envelopes, and **because these items were in *envelopes*, he did not notice them.**

**Mr. Manely has just told Plaintiff that when he looked down into the folder, and after he tore through the folder (which we must assume involves**

**dumping it out on a desk and thoroughly sifting through the contents), that he could not detect the presence of these items, that they were invisible to him,** ***because they were in envelopes.***

Mr. Manely offered no explanation as to what special technique or apparatus he employed during this second examination of the folder that enabled him to detect the previously "invisible" envelopes. Plaintiff did not bother to ask, as quite obviously, it was a lie. Apparently, this excuse was employed by way of attempting to give Plaintiff adequate reason for the Firm waiting until late in the last day (a Sunday, no less) before Plaintiff is scheduled to appear in court to even bother to review them.

On numerous occasions, including his response to Mr. Manely's March 27th email [Ex. A] Plaintiff reminded the Firm that they still had not discussed these cases and the hearing was fast approaching. Plaintiff additionally, repeatedly told the Firm it was important to make sure the motions Plaintiff had filed pro se were valid, **as he did not want to waste the Court's time, or counsel for the Defendant's time by making him come to a hearing that was not necessary.** The Firm refused to discuss any of this with Plaintiff until literally the last minute – in an email from the Firm to Plaintiff late Sunday night before court, and as Plaintiff and Mr. Manely walked from the Firm's office to the courthouse they briefly touched on

it.

Plaintiff was not informed that the Firm felt the two Motions for Default Judgment were void on their face, and the third Motion to Change the Method of Service would never be approved by the Judge, until it was out of Plaintiff's control to withdraw the motions. **This is a developing pattern of the Firm, and one constantly complained about by Plaintiff – not communicating with Plaintiff, and waiting until the last minute to spring decisions on Plaintiff, when it is too late to for him to be allowed any control over, or involvement in determining his own fate. In the same vein, talking out of the side of his mouth, Mr. Manely proclaims that he will advise Plaintiff, but will respect Plaintiff's wishes concerning making decisions and acting on them, but his actions are the exact opposite, and are designed only to not allow Plaintiff to exert any control over his own court cases.** When plaintiff unhappily reminded Mr. Manely the motions should have been withdrawn prior to the hearing, **Mr. Manely indicated it was ok to have made Mr. Gray come all this way for nothing** – that it gave them a chance to meet; **it was a good thing**. Plaintiff reluctantly accepted this explanation. However, when Plaintiff recounted this to Mr. Gray, just prior to the deposition, Mr. Gray indicated to Plaintiff that Plaintiff's initial reaction was indeed correct, that it was incredibly rude of Mr. Manely to cause him to drive across town to a hearing

that should not have taken place, and consequently cause increased legal costs for both Plaintiff and Defendants, not to mention was an unnecessary drag on the Superior Court's valuable time. Mr. Gray also informed Plaintiff that the Firm had scheduled and cancelled two previous depositions of Plaintiff, of which Plaintiff only has recollection of the one he had to cancel due to illness (which Mr. Manely rather callously disputes and makes light of [Ex. C]), and does not believe the Firm ever informed him of the other.

Plaintiff concludes that either Mr. Manely is so callous as to not have concern over putting others out and causing unnecessary legal fees, or he did not cancel the hearing due to the simple fact that he could not – he had not even reviewed the motions until the Sunday night before Monday court, and there was no time to do so.

On or around the latter part of April, Plaintiff called the Firm's office and asked them to pull a particular item from the file, for Plaintiff to pick up. Plaintiff was told that this item was not in the file (again), and was given a description of what was in the file. Similar to Mr. Manley's first examination, there was a particular block of items that seemed to have disappeared. Plaintiff ***again*** insisted these items should be there, and was put on hold while a search was performed, which yielded no results. Plaintiff was then told by the Firm that it would do a more

exhaustive search, and call him with the results. They informed Plaintiff that they would keep looking, and that they would check with Mr. Manely when he came back to the office, and if the items were found, they would call Plaintiff and inform him of such. **No such notification that these items had ever been found has been given to Plaintiff, to date**. In Plaintiff's letter of termination [Ex. B], he pointed out one of the reasons for such as being the Firm's apparent inability to keep up with his file. In Mr. Manely's vitriolic response [Ex. C], he states that "I haven't told you that anything has disappeared. I haven't told you that anything has been lost." Nothing could be further from the truth. In his March 27th email to Plaintiff [Ex. A], Mr. Manely declared he could not find the single most important envelope in the file.

Plaintiff feels it is important to note here that the Firm's services were terminated from 1-04-cv-3427, in part, because **the Firm communicated with and held meeting(s) with opposing counsel and their Defendant clients, behind Plaintiff's back, and expressly against his wishes. The Firm dismissed cv-3427 without Plaintiff's permission and did not inform Plaintiff of the dismissal until after having done so, recklessly endangering Plaintiff's position in his federal and state actions, collectively.**

**The Firm entered into a court approved agreement [Ex. F] on Plaintiff's**

**behalf, concerning a time extension given Defendants, without Plaintiff's consent and against his wishes, and again, did not even inform Plaintiff of such** (becoming increasingly suspicious of the Firm's actions, Plaintiff went on Pacer and discovered this agreement).

These actions by the Firm are referenced in this demand for the file for good reason. They involve Plaintiff's attorney going behind his back, and this is the main concern Plaintiff has for his being unable to retrieve his file. Portions of the file contain information that, in the same vein as the Firm's other movements behind Plaintiff's back, involve possible improper activities between the Firm and opposing counsel.

Plaintiff has no desire to besmirch the reputation of either of these firms, nor the character and professionalism of any individuals with these firms **(unlike Plaintiff's own counsel, they each, to date, have treated Plaintiff with the utmost courtesy and professionalism)**, unless and until such actions can be verified to within a great degree of certainty by Plaintiff.

Accordingly, while Plaintiff feels it necessary to file this motion with the Court immediately (it has now been close to *one and a half months* since the Firm promised it was mailing the file), he would **also move this Court to order** Gray, Rust, St. Amand, Moffett & Brieske, as well as the firm of Balch & Bingham L.L.P.

**to provide Plaintiff with all materials** in their possession having bearing on any and all communications they have had with the Firm. Similarly, **Plaintiff moves this Court to order the same of the Firm.** Further, **plaintiff moves this Court to order the Firm to retain and not destroy** any and all documents, records, etc. (whatever is left) relevant to these actions and the Firm's communications with Plaintiff, and all others. Plaintiff will file a supplemental brief as these documents and any new information deem appropriate. This brief will more particularly describe any interaction between the Firm and Defendants' discovered by Plaintiff, or the lack thereof. Also further described will be one particular item from the file. It seems to be central to both much of the Firm's deceptions as well as the possibility of involvement by others besides the firm, and is the one item that, while the firm has flip-flopped on other parts of the files whereabouts, has been claimed to be missing by the Firm consistently (with the noticeable exception of Mr. Manely's claim in Exhibit C that he has not told Plaintiff that anything has disappeared or been lost).

Plaintiff wants to take every possible precaution to make sure he does not allege improper behavior against anyone other than the Firm, at least until he is able to give each opposing firm every opportunity to provide Plaintiff with this documentation (emails, fax logs, etc.) concerning their communications and

interactions with the Firm, that will hopefully show what Plaintiff suspects – that the Firm, for whatever reasons, acted on its own, and was not aided or interacted with improperly, in any way, by others.

In light of its actions to date, Plaintiff has every reason to assume that the Firm has intentionally held Plaintiff's file. In the May 9th, 2005 letter [Ex. D] that was included with a final billing, the Firm notified Plaintiff that it would be sending the file under separate cover. No demands of conditions to be met prior to releasing the file were stated; just that it would be mailed separately, and for no particular or good reason.

This seemed suspicious to Plaintiff, as there was no apparent reason to not send both the letter and the file together. The Firm also mentioned in this letter that the postage for the file's mailing was not yet known, and would be billed to Plaintiff the next cycle. **The next billing cycle has come and gone, and the Firm has not billed Plaintiff for postage to mail the file, so there is absolutely no reason to believe it has been mailed.**

So why didn't the Firm include the file in the same mailing as this letter and billing? The only reason that occurs to Plaintiff, is that they had no intention of sending the file, but definitely wanted him to get their final accounting.

In a letter dated and faxed to the Firm on May 3, 2005 [Ex. B], Plaintiff

informed the Firm that its services in the matter of Cunningham v. Whiteners, et al, 1-04-cv-3427, were terminated. **Plaintiff did not terminate the Firm from any of the three cases against The City of Smyrna in Cobb Superior Court, and has not been allowed to even see the relevant notice sent to the Superior Court or to this Court, by the Firm. The fact that the Firm apparently misled the Superior court on this matter is also very disturbing to Plaintiff.**

Plaintiff knew there was not enough time to find new representation before his scheduled deposition, and like it or not, felt it was necessary to "tough it out" with the Firm until getting to a better breaking point. There were no similar, immediate crises in cv-3427, the Firm had already dismissed it, and the immediate, irreversible damage was already done here. It is also understandable that the Firm may have preferred to withdraw from representing Plaintiff in the three Superior Court matters - but it did not. Rather, it falsely told the Court that Plaintiff had removed the Firm [Ex. G], and this is inexcusable. Also, it is Plaintiff's understanding that such a withdrawal by counsel must be approved by the court [Rule 4.3], and estimates that such action by the Firm appears to be an attempt to subvert the proper legal process.

In this May 3rd letter, Plaintiff instructed the Firm to please have his file ready to pick up ***by*** 1:00 p.m., May 4, 2005. Plaintiff asks for the entire file, as he is

certain the Firm is incapable of insuring its safe keeping.

As first mentioned above, the Firm has a **repetitive history of "misplacing" particular, pertinent parts of the file**, and Plaintiff not only felt uncomfortable about the security of his materials, but was quite concerned about the nature of these particular "missing" materials and the Firm's motivation for intentionally not making these available to Plaintiff, and indicating to Plaintiff that they could not be found, all followed by Mr. Manely's rant that "I haven't told you that anything has disappeared. I haven't told you that anything has been lost." [Ex. C]. Actually, the truth is that the Firm has repeatedly told Plaintiff that various parts of his file were missing.

Plaintiff, upon request by the Court will happily produce a plethora of supportive emails and have his personal telephone calls transcribed and provided to the Court, all of which will repeatedly support all Plaintiff alleges here, and more.

On May 4th, 2005, in response to Plaintiff's letter of termination, the Firm faxed (and mailed) Plaintiff an emotional outburst of a letter [Ex. C], its almost **incoherent ramblings described the firm's opinion of the quality of Plaintiff's cases as being MUCH different and considerably LESS than the positive, supportive opinions given prior to taking $5000.00 from Plaintiff**. We will touch only briefly here on this – it will be taken up in much greater detail in a letter to the

State Bar.

Plaintiff had originally asked Mr. Manely's opinion of the federal complaint he had written (as well as the Smyrna Appeals – these the Firm has never had any substantive discussions with Plaintiff about). Plaintiff is not an attorney, and while confidant in the allegations he raised, assumed he had probably done something wrong, or made some type of mistakes **(case in point - Plaintiff being unaware that Defendant had 45 days to respond to the Superior Court appeals, rather than thirty,** and incorrectly moving for default judgments). Mr. Manely told Plaintiff that no, he had done just fine with cv-3427, only that it was too long, written in the form of a brief, where he would have written it more for the judge, leaving out the rhetoric (Plaintiff acknowledges and apologizes for this recurring deficiency in preparing Court filings). When Plaintiff asked what he would change, **Mr. Manely said he would change nothing,** that any changes would be insignificant, amounting to nothing more than simply editing Plaintiff's work, and that there was nothing to be gained from that. **Plaintiff considers that a very large vote of confidence, by the Firm, for his complaint.**

Plaintiff wondered why they were having no "meat and potatoes" discussions about the complaint, such as what, of the total ($150,000,000) demanded, was Plaintiff seeing as the division of financial responsibility of the individual

defendants, etc. As time wore on Plaintiff became increasingly concerned that the only discussions taking place were concerning dropping Defendants and ignoring pretty much all the causes of action, to the exclusion of only getting the Purchase and Sale Agreement back in play.

The terms offered by Defendants were no different than what they offered months ago, that Plaintiff had turned down, and that amounted to wholesale, unacceptable modifications to the Agreement, and led to cv-3427 being filed. Had these terms been acceptable to Plaintiff, there would have been no need to continue this action, and accordingly, the Firm had no reason to do anything but advise Plaintiff to accept the Defendants offer from months ago. Convincing Plaintiff to go forward with it, charge Plaintiff for executing service, etc. only to later decide Plaintiff should take the original offer, is inexcusable.

No new information had been made available to the Firm to cause it to reverse course like this. Defendants had come to the Firm (the Firm met with them behind Plaintiff's back) with terms identical to those proposed months earlier; terms that the Firm had agreed were not acceptable.

Becoming greatly concerned about the Firm's loyalty and ability, it appeared to Plaintiff that the only course being suggested was that of whittling down the complaint, and suddenly determining that not all defendants were worth prosecuting,

and that many should be dropped. **Mr. Manely insisted this was not true**, he had no plans to drop any defendants, **that *all* of the causes of actions were good.**

However, in total contradiction to these statements of his, Mr. Manely, in his May 4th letter (and in several other communications with Plaintiff) now uses the *following phrases* concerning his opinion of Plaintiff's complaint:

"the mess you've made for yourself"; "the paranoid ramblings of your complaint"; "you just want to make trouble"; **"your fantasies about the viability of your federal action**"; **"I don't think Garvis Sams did anything actionable"** (plaintiff can produce multiple documents showing Mr. Manely repeatedly insisted the causes against Sams and his firm were good); **"given your unsupportable position against the Whiteners,** I suspect that the Smyrna case may also be more premised on **your desire to cause trouble** than to **actually resolve anything**"; "assuming that you had a valid lis pendens in the first place"; "good luck swinging at windmills of your own making".

These positions are diametrically opposed to those stated by the Firm, at least prior to taking $5000.00 from Plaintiff.

Mr. Manely enticed Plaintiff to DO INDEED come in, at *exactly* 1:00 pm to retrieve his file.

Plaintiff was not comfortable with the tone of, or the totality of the letter's

contents, let alone the demand he come ***at exactly 1:00 p.m.*** Quite frankly, Plaintiff felt he was being set up, and chose to not pick up the file in person.

On May 7th, 2005 Plaintiff sent the Firm an email [Ex. E] stating that after reading their May 4th letter, he was apprehensive about coming to the Firm's office. He felt that Mr. Manely seemed extremely agitated, he felt the tone of the firm's letter was threatening, and did not want to expose himself to the possibility of a physical confrontation with Mr. Manely. He was especially concerned about this due to Mr. Manely's taunts to Plaintiff that Plaintiff has a "staggering case of fear".

**Under normal circumstances, Plaintiff would be amused at the irony of such a distinction being made in reference to himself, but in this instance, combined with the level of hate expressed by Mr. Manely in his letter, Plaintiff took this quite seriously, as both a threat *and a dare*.**

Plaintiff further stated in this email that he thought it would be best if the Firm mailed the file to him.

As first stated above, the Firm, in its May 9th, 2005 letter to Plaintiff, stated it would be mailing Plaintiff's file. To date the file, an additional invoice reflecting the postage for mailing the file, or anything else from the Firm, has not been received by Plaintiff.

WHEREFORE, Plaintiff respectfully requests that this Court order the

Manely Firm, P.C. to forward Plaintiff's file to him, inclusive of all materials, as first described above, as well as any further relief deemed necessary by this Court.

Respectfully submitted,

James D. Cunningham, Pro se
PO Box 878
Smyrna, GA 30081-0878
770-434-3503
770-431-9179 fax

EXHIBIT A

**From:** Jim
**To:** mcmanely@...
**Sent:** Monday, March 28, 2005 8:27 AM
**Subject:** Re: Refile Whitener; missing papaerwork

Am I seeking more time to get them served properly?

Are you kidding? For two weeks you've been telling me that YOU were going to get a continuance so that we would have time to go over it all. I have asked you various questions about this stuff, repeatedly, so you would know where I at least think I am in it all, and you have answered nothing.

I have no idea if I want more time to re-serve. That's one of the things I've been asking you about the possibility of. We were getting more time so we could go over it all.

I don't consider talking about it in the 15 minutres prior to the hearing giving it proper attention.

I can't believe you did not even look at any of it until Friday afternoon, and as you told me afterwards, all that was in the folder was the stuff I filed, that you had "torn through it and there was nothing else in it".

Now you're telling me you didn't notice the other items in the folder BECAUSE THEY WERE IN ENVELOPES?

This is outrageous. You looked in that folder and did not notice those items because they were in envelopes? Please.

You've had this stuff for two weeks, I've asked about it repeatedly, and you've had nothing to say about it until the night before I'm due in court? All you've said about it is that you'd get it continued, and from the message you left me last night you're not confidant of doing that.

You honestly think it's ok to put me on the spot of waking up the morning I have court and getting an email telling me we'll discuss it as we walk over to the court?

These other lawyers are showing up for a hearing that either should have been put off soon enough to keep them from having to show up, and if your advise is that there is no use having a hearing because I have no standing, that also should have been done prior to this hearing.Now I'm going to be on the hook for them having to come to the hearing.

I can't believe this, Michael.

I need to look at the new Whitener complaint, which needs to be filed this morning, and you haven't given me that in time to make any changes I may think are necessary, either.

See you at 8:45.

> ----- Original Message -----
> **From:** Michael Manely
> **To:** Jim
> **Sent:** Sunday, March 27, 2005 8:50 PM
> **Subject:** RE: Refile Whitener; missing papaerwork
>
> Hey Jim,

I didn't make it in yesterday. I came in tonight and just finished reading it all. The Rule Nisi's and Smyrna's responses were all there, they were just in envelopes. I hadn't checked the envelopes.

You are on for Rule Nisi on 2 issues: Enlargement/Change of Service Procedure and Default Judgment.

Default Judgment:

From Smyrna's response, you haven't yet served it on them. According to 9-11-4, service must be personal. 9-11-5 doesn't apply to the Complaint. Further, they claim that you didn't have a summons. As we discussed in Whitener, you must have a summons. Finally, they claim they paid costs, which allows them to file within 45 days.

Enlargement/Change of Service Procedure

Enlargement:

Are you seeking more time to get them served properly?

Change of Service Procedure:

Won't happen. It is enough that you called the Judge's attention to it. Further, you provided all the envelopes for correct post mark dates but not the one that's 10 days later than the Cert of Svc. Do you have that one?

I left you a message earlier tonight. We're on for 9:00. Let's meet here at the office at 8:45.

Michael Manely

----- Original Message -----
**From:** Jim
**To:** mjmanely@mindspring.com
**Sent:** 3/27/2005 6:58:26 PM
**Subject:** Refile Whitener, missing papaerwork

Michael,

I thought you were going to call me from your office yesterday, did you find that stuff? The first day we met, I left all of it with you - the copies of all I filed, the notices from the judge, and copies of what the other side filed and mailed to me.

I can't believe you didn't even look at any of it until Friday afternoon, especially since the court was closed. It seems that you would have gone to the judge to put it off in time to let the other side know not to show up...having to do it at the hearing tomorrow morning seems like it would do nothing but piss them all off, and get off to a bad start with the judge, which I certainly don't need in Cobb County.

Also, I'd like to review and sign off on the changes you made to the Whitener complaint (as well as everything else that gets done in my name/on my behalf) before it gets filed.

Hopefully, you'll get this in time to email it to me early enough.

I don't even know what time we're meeting at the court in the morning. Please let me know.

Jim

A-2

# Smyrna Development Company

EXHIBIT "B"

PO Box 878
Smyrna, GA 30081
USA

COMMERCIAL PROPERTIES &
RAW LAND - Individual Lots/Multi-acre Tracts
Phone 770-434-3503
Fax 770-431-9179
Cell 770-527-4330
Email jim@jdcunningham.com

May 3, 2005

SENT BY FACSMILIE

Michael Manely
The Manely Firm, P.C.
7 Atlanta Street
Suite C
Marietta, GA 30060

Michael:

Your services and representation on my behalf in the matter of Cunningham v. Whitener, et al. (1 04 CV 3427), including any other dealings with the Whiteners I have or may have, are HEREBY TERMINATED.

I have expressly indicated to you that I wanted to be involved in all decisions, and did not want notice of such decisions, meetings, filings, etc. sprung on me at the last minute, or even not at all.

Our contract stipulates that neither of us can dismiss without the other's permission, yet you informed me you had done so (and without re-filing) only after the deed was done.

You told me my meeting with the Whiteners was cancelled, but in truth, you took that meeting, without me, without my consent, and without informing me the meeting was taking place.

You waited a full week to even bother telling me you had met with them behind my back.

You told me neither side could take any action until after the Whiteners

and I had met, but in truth, there was a court order (that you had consented to) which set a final date by which the Whiteners must answer the complaint, that controlled. You withheld the existence of this order from me.

I only discovered this order after becoming suspicious of your actions and logged on to Pacer to check for new filings.

You continuously refuse to answer questions I send you concerning this matter.

You amazingly have even refused to tell me what you put my position as being to the Whiteners and their counsel at the two meetings you took with them (that you prohibited me from attending).

You sent me what they proposed at the meeting and asked for my position, but refuse to supply me with any of the information I need to make any such decisions.

You told me we needed to let them know by April 27th, a full week ago, but you refuse to respond to my queries, effectively hamstringing my ability to make any decision.

I also have told you I had no interest in meeting with the Whiteners, and did not want to "shine them on" and waste their time, if all we were discussing was getting the contract back in play, as my complaint requires many other related causes that make up the complaint to be addressed in conjunction with, if not before we can go forward with the contract.

I clearly and specifically told you that my plan for the meeting was to go over each cause of action individually, and ask if they planned to negotiate a settlement or planned to litigate each one. I said that after that we would get to the contract, and that I was going to inform them that there would be no changes to it, it would not be renegotiated. It would simply be performed as required, this time.

Counter to these instructions, not only did you meet with them in my place, and without my permission, but you also did not at the very least put my desired position forward to them, as I had told you I wanted, no, INSISTED.

Even after having read my complaint, and my **repeatedly** pointing out to you the importance of these other causes, you have refused to alter your (my) course, and continue trying to push me forward in this contract negotiation, and to the exclusion of the other causes, all of which I consider to be inter-dependant.

You repeatedly refer to my simply purchasing the property being the exclusive reason and goal behind my complaint, even though there are several

other, relevant causes, and even though I repeatedly, ADAMENTLY indicate these are equally important, integral parts of my complaint, and that they will affect the value of the property, and consequently the contract itself.

Funny, but before the $5000 check cleared, YOU thought they were pretty good causes, too. You even remarked that there was much of the complaint that was "summary judgment" worthy, and that the RICO causes likely even met tougher federal standards. Now you're advising me to take their offer to only get the contract back in play, taunting me by asking "unless you want to find out what the judge will do". Yeah, that exudes confidence in the complaint...

How do you deal with my known wishes? You intentionally withhold the fact that an order has been issued by the court, so that time will expire and I lose my ability to influence the decision.

I have never given you that right, rather, have expressly forbid it. I have repeatedly told you I want to be involved in all decisions, and do not want to be surprised with things at the last minute.

Not telling me the court ordered them to answer is exactly counter to my instructions to you.

I paid you $5000 in advance, and have asked you many questions relevant to all actions, that have gone unanswered. I thought maybe they were too brief and went unnoticed, so I sent you follow up query's, providing more detail as to my motivation behind the questions, etc.

Your response to this was to berate me for being long winded, and not submitting the questions in "bullet form", and what a waste of my money it was to make you read these long winded diatribes.

Actually, I submitted these to you because you had refused to address them when previously submitted in "bullet form". So I'm paying you over and over for the same unanswered questions.

I also suggested that you may "have too many irons in the fire". You have repeatedly waited until literally the last minute to do anything, and often are not familiar with what is at hand.

You refused to answer questions I had about the actions against Smyrna in Cobb, and we had no discussion on them until we walked to the courthouse the morning of the hearings. I have asked your opinion concerning additional federal actions against Smyrna, and can't get anything out of you on that, either.

You didn't even read the actions I had filed in Cobb until the night before court, thirteen days after I gave them to you, and we still have had no

discussions about your opinion of the quality of the actions, or how to best proceed, yet I have a deposition on them scheduled. When I brought this up to you, you told me we'd talk about it probably the day of the deposition. That's kind of late, and again, at the last minute – way too late.

During one recent conversation, you were not even aware of one of the three actions in Cobb that you had already appeared in court on. You attributed this to the fact that you were "still playing catch up" (though I had PAID you to be aware of it).

Your answer to my suggestion that your being unable to keep up with my cases was because you had too much other stuff going on, was to tell me it was **because I had not hired you full time at $9000 per week,** which, what, makes you not having a clue **MY fault**??

Nothing in our contract, or in any communications before or after me giving you $5000 in advance, did you indicate to me that I would be getting "sub-par" service due to not hiring you full time. The only time that subject was ever broached was when you recommended we start with only a small number of defendants in cv-3427, that otherwise the workload would be so excessive it would require you "working for me full time", or at least having to hire a paralegal full time to do so.

At our first meeting we spent 2.5 hours at $200 per hour. You estimated it would take you about the same amount of time to answer my questions on statute of limitations, dismissing without prejudice, etc. so that I could decide how to proceed when we spoke three or four days later, so I wrote you a check for $1000 (actually, you did not have those answers when we spoke on the phone, you simply asked me if I was prepared to give you another $4000 or not – forget that this decision was to be determined by the answers you had for me, which you did not have).

These issues were not dealt with until our next in person meeting. Additionally, when I got your itemized bill, you had charged me for 3.5 hours on our first meeting, and it was only 2.5 hours.

When you chastised me for being long winded, you pointed out that you having to read and answer my last set of questions were costing me around another $400, which equals 2 hours time.

I've read and re-read my questions and your answers and am dumbfounded at it taking you 2 hours. None of these questions required research, you answered off the cuff on each one, many consisting of only 2 or 3 words. Thirty minutes is probably accurate, and an hour is a bit much, but you're saying it took you two hours? Not to mention I was forced to re-ask

many of these questions as you had previously refused to answer them.

You bragged about what a great amount of work you have done for me, but I don't see it. You re-read my questions you don't answer, and take actions I do not authorize and that we don't need, that result in nothing but spending my money.

You even gave yourself a huge pat on the back for "keeping me from getting hammered" at the Cobb hearing.

In truth, that hearing was wasted time and money, and was nothing but about $35 worth of advice. The two motions for default judgment were void on their face and you knew it immediately upon reading them and you also immediately knew the change in service motion had no chance.

I had already instructed you that I did not want to waste Gray's time if we were going to withdraw the motions, but you made all of us waste our time, and my money by attending the hearing regardless of its futility.

You refuse to tell me why I would have to dismiss my Smyrna complaints in Cobb to be able to file additional actions in federal. I told you long ago if I did go fed, I probably wanted to do so well before the deposition, but you never discussed it with me or even bothered to simply answer why I'd have to dismiss in Cobb first and how I'd have to proceed, or heaven forbid, actually even give me a legal opinion on the changes in course I was proposing.

So, there I was again, deposition scheduled on this past Monday, and as late as last Friday afternoon we still had not discussed these complaints and their merits or lack thereof. Not to mention this discussion would have possibly ended in my wanting to go federal, which would necessitate postponing the deposition….but you could not be bothered.

I'm glad I got sick and had to cancel.

Speaking of the deposition, you were going to let me go into the "lion's den", without us EVER having discussed my cases, and again, what their merits or shortcomings were. Talk about getting hammered, they'd have eaten me alive, and YOU were setting it up.

You apparently are also unable to be trusted to keep up with the documents I left in your care. When I left those documents with you I told you they were my originals and did not have copies of everything, and to please take care with them.

I have told you I wanted to take that one envelope to the Post Office and track it's travels, yet your office informs me it now seems to have disappeared.

Because of your actions/inactions, my complaint against the Whiteners has been dismissed, and you've made sure I don't have enough information to make a decision as how to proceed.

You have refused to answer why we should go into state court instead, and if I can pursue the fed charges there or not, and you tell me that if I stay in fed and lose the fed causes, I lose the case including the state causes, which makes no sense, but you will not explain.

Not to mention you were 100% behind all causes in my complaint and keeping it in fed court, until after I had given you $5000, and now that has all changed. Early on, in promoting your decision to stay in fed, you had even commented on how that would really be good to keep Sams there, as he wouldn't be "in his backyard", but of course, you later decide he's not even worth suing.

It's very telling, that at this very moment, after over six weeks, after all the money I've given you, and all the supposed work you've done on my behalf, as far along in the process that we should be right now, and I have absolutely no idea where any of these complaints I hired you to help me with stand.

All I know for sure is that you have dismissed my complaint against the Whiteners, et al, and I have no action against them at all. They could sell that property today and I could not stop them. This is a position I repeated to you over and over that I did not want to be put in – it's a lot easier for them to hold off a challenge from me after selling the property.

Now that the lis pendens are also null, any chance I had at the contiguous properties has probably been frittered away, and there's no telling what effect it had on my Smyrna actions. I guess they're teetering on the brink, too. It's almost like a great plan has come together. Whatever needs to happen to destroy my position is what seems to happen, at the end of the day.

Speaking of the Smyrna actions – I appealed the Hatcher re-zoning hearing, and did so based on the fed suit and lis pendens, along with challenging it's legality because of Cochran, which as I understand it means that the status quo had to be maintained until the matter is finally adjudicated.

This means that they have no right going forward with developing the property as anything other than it was already zoned, **if even that**, yet that is exactly what they are doing. I've asked you repeatedly about getting a TRO, and I'm pretty sure that at one point you agreed that I could not stop them from clearing, etc., that could be done as it was already zoned, but that they could not develop it under any new zoning classification.

HOWEVER, they have done just that, we've attempted no TRO, and you refuse to confirm, contradict or give any opinion at all as to what is legal here.

You simply ignore the question, and the property is being decimated. I have to wonder if that is not because you dismissed my complaint and I now have no standing. But hey – beats the hell out of me, I can only guess, because YOU WON'T TELL ME.

As long as the contiguous properties remained undeveloped, there would be a chance that, should I prevail in my actions, I would still be able to purchase and use them as planned – which, by the way, was to re-hab the existing structures and create a "mill village", which kept all the old magnificent oaks. They have now been razed to the ground due to inaction on our (YOUR) part.

You didn't even try. How hard could it have been to file a TRO? Worst that could happen is it would have been turned down, but I bet the Judge would have erred on the side of the houses and the trees…they could always be bulldozed and cut down later, but we sure as hell can't put them back up, now.

You've spent my money going to meetings and acting counter to my expressed wishes, and dragged us all to moot hearings, but you wouldn't take the time to type up and file a one page TRO that DOES attempt to further my cause?

Another Marietta lawyer "fighting for me". Jeez, I'm such an idiot.

After all your jumping around, dancing this way and that, telling me all about the wonderful work you're doing for me, and all my actions are going down the toilet.

After all you've actually done for me, I'm really worse off than what should have happened had I decided to stop after the "$1000 worth". That covered you reading my complaints and telling me how to proceed, and then gone forward myself.

Again, as I sit here today, I have no idea if I should re-file in fed, or go to state on cv3427, how I stand and should proceed on the Smyrna stuff, and how/if I can go after the fed causes on that. These are exactly the things you could/should have told me from the first five hours work, yet **I've paid you five times that** and still do not have that information, and my complaints are worse off than when I brought them to you.

I can't believe I was so foolish to believe I could expect to get help

from another attorney on the Marietta square.

You have failed and/or refused to perform, accordingly, in all areas, and if anything, your actions cumulatively have been nothing but detrimental to forwarding my cause and protecting my interests, you know, that stuff I HIRED you for?.

Pursuant to paragraph eight of our agreement dated March 21, 2005 the relationship concerning the Whiteners, et al is now officially terminated.

Thanks a lot, Mike.

"Fighting for the little man" .What a joke.

You owe me money back, and you're responsible for whatever damage you've done to my position in these matters.

Please have a check, my original documents (whatever you haven't lost), along with a copy of my complete file inclusive of all communications with others that you were supposed to cc me on, contemporaneous notes, etc. ready for me to pick up tomorrow by 1:00 pm, May 4, 2005.

________________________________

JAMES D. CUNNINGHAM
President
SMYRNA DEVELOPMENT COMPANY

EXHIBIT C

# THE MANELY FIRM, P.C.

MICHAEL E. MANELY
ATTORNEY AT LAW

7 Atlanta St., Suite C
Marietta, GA 30060
Telephone: (770) 421-0808
Facsimile: (770) 421-0288

## FAX TRANSMITTAL COVER SHEET

TO: Jim Cunningham FAX NO.: 770-431-9179

COMPANY: Smyrna Development Company

FROM: M.E.Manely

DATE: May 4, 2005

TIME: 10:15

NUMBER OF PAGES (Including Cover Sheet): 4

MESSAGE: Please see the attached.

Thank you for your attention to this matter.

SENT BY: SD HARD COPY SENT: Yes

## CONFIDENTIALITY NOTE

*The information contained in this telecopy message is being transmitted to and is intended only for the use of the person above-named. If you are not the person above, let this advise you that any dissemination, distribution or copy of this telecopy is strictly prohibited. If you have received this telecopy in error, please immediately notify us by telephone and destroy the entire message.*

THE MANELY FIRM, P.C.
MICHAEL E. MANELY
ATTORNEY AT LAW

7 ATLANTA STREET, SUITE C
MARIETTA, GEORGIA 30060
TELEPHONE: (770) 421-0808
FACSIMILE: (770) 421-0288

VIA FACSIMILE

May 4, 2005

Jim Cunningham
Smyrna Development Company
P.O. Box 878
Smyrna, GA 30081

RE: Cunningham v. Whitener, et al.
United States District Court
Civil Action File No.: 1:04CV3427-TWT

Cunningham v City of Smyrna, Georgia
Civil Action File Nos.: 05-1-0094-42,
05-1-0095-42 and 05-1-127-42
Cobb County Superior Court

Dear Jim,

I am elated to hear that you no longer require our services. I must confess that after your pretense of illness on Friday so that we could not meet to prepare you for your deposition, I realized that you have a staggering case of fear. With your unwillingness to follow through with the Whiteners and your refusal to cooperate on the Smyrna case I was caught in quite a quandry. I don't know what to do when a client is too afraid to carry on. Thank you for resolving that dilemma.

Your latest vitriolic diatribe is another waste of time, mine and yours. I've attempted to legally help you every step of the way. I've attempted to get you out of the mess that you made for yourself. I've done a good job. The Whiteners were back on track. They were ready to sell you the property without any difference in price terms. They only wanted to know that you were serious about actually buying the property rather than wasting their time. If they are willing to sell you the property, they vitiate the paranoid ramblings of your complaint. (The ramblings only become paranoid when the folks you accuse of being out to get you put themselves in a legal position to prove that they are not.)

You dumped the Smyrna case on me. It was not the original basis for our $5,000.00 contract, but I accepted your plea to help just before your hearing and have managed it so far without demanding an additional retainer.

C-2

Cunningham letter
5/04/05
page 2

I won't belabor every point you raise in your lengthy letter. Suffice it to say I dispute your distorted position. But I do want to remind you that I dismissed the Whitener case only after you demanded that I do so and that I granted an extension of time to the Whiteners only because you were extremely concerned that they might Answer. We discussed this, as we discussed everything, at great length.

The first Whitener meeting was only between counsel, as you know. The Whiteners contended that the entire fiasco was a misunderstanding. I wanted to sus that out. After meeting with counsel, I thought that there might be some truth to that. After dealing with you, I'm fairly certain that this is not true. The Whiteners want to sell you the property. You just want to make trouble.

The second meeting was not to be. I cancelled that meeting, as you know. It was to take place in Smyrna. The Whiteners and counsel dropped in on me here in Marietta. You contend that this was a part of the great conspiracy. You contend that I, along with the rest of the world, conspired against you. Sorry, not the case. I take my fiduciary duty seriously and your issues are not important enough for me to disregard my obligation to you.

Your fantasies about the viability of your federal action have been addressed in previous emails. As I have stated before, the Whiteners need to sell you their property. Done (but you refuse.) ReMax should not have been representing both sides of the fence. Viable claim. Weisman, Nowak should not have been representing both sides of the fence. Viable claim though potentially too costly. I don't think Jenny Pruitt did anything actionable. I don't think Garvis Sams did anything actionable. Cochran is a separate issue. My thoughts on his culpability may be too intertwined with your credibility, which means that he may not be culpable at all.

I have made no assertions about the veracity of your Smyrna case. I have been focused on the Whitener case. Given your unsupportable position against the Whiteners, I suspect that the Smyrna case may also be more premised on your desire to cause trouble than to actually resolve anything.

You argue that I spent too much time working on your case but you argue that I did not spend enough time working on your case.

At our first meeting with spent in excess of 3.5 hours. You may recall that I finally had to stop the meeting because I had to pick up my son. I ended the meeting at 2:00. We started before 10:00. You do the math.

I haven't told you that anything has disappeared. I haven't told you that anything has been lost.

C-3

Cunningham letter
5/04/05
page 3

You contend that the Lis Pendens is null. Assuming that you had a valid Lis Pendens in the first place, the Whittner's counsel apparently does not perceive it to be null.

I did see your TRO draft though I didn't analyze it. I don't think I billed you for that time. I'll have to look into that. Again, you won't work on the Smyrna case with me so that I can comprehend what you are getting at. You won't meet. You won't sit for deposition. You just throw stones.

You have demanded some refund. We ran our bills yesterday. I will look at your balance and make a decision. Understand that I have spent another hour and a half responding to your latest attack.

Please do come in at 1:00 today to retrieve your file. I have notified the Court and opposing counsels that you have terminated my services. Good luck at swinging at the windmills of your own making.

Sincerely,

Michael E. Manely

AUTOMATIC COVER SHEET

DATE : MAY-04-2005 WED 10:37 AM

TO :

FAX #: 7704319179

FROM : THE MANELY FIRM

FAX #: 7704210288

PAGES: 05 PAGES WERE SENT
(INCLUDING THIS PAGE)

C-5

Exhibit "D"

THE MANELY FIRM, P. C.
MICHAEL E. MANELY
ATTORNEY AT LAW

7 ATLANTA STREET, SUITE C
MARIETTA, GEORGIA 30060
TELEPHONE: (770) 421-0808
FACSIMILE: (770) 421-0288

May 9, 2005

Mr. James Cunningham
PO Box 878
Smyrna, GA 30081-0878

Dear Mr. Cunningham,

Please find enclosed a statement of charges since March 1, 2005, a revised invoice for March and your invoices for work completed in April. Per our conversation, please forgive my error of charging you the regular billable rate for attorney time in March. I have revised the March invoice, reducing the hourly rate to $200 an hour as agreed. I have also correctly used that rate for attorney time in April.

Regarding your contention that your initial meeting with Michael lasted for only two hours, please note that Michael, our secretary and paralegal are certain that you met with Michael for over 4 hours. Our secretary and paralegal specifically recall their frustration at not having access to Michael for such a long period of time, and their additional frustration at him having to dash out the door to make his 2:30pm appointment without getting to meet with him to resolve their questions. Therefore, I am not reducing the billable time for your initial meeting.

Under separate cover, we will be mailing your file. Next month's bill will reflect costs for postage and other costs associated with closing your case. I am sorry we did not have a chance to personally meet with you to bring closure to our business relationship. Please accept my hopes that you successfully resolve your legal issues and prosper in all areas of your life.

Sincerely,

Shelia G. Manely
Business Manager

EXHIBIT E

**Jim Cunningham**

**From:** Jim Cunningham [jim@jdcunningham.com]
**Sent:** Saturday, May 07, 2005 9:07 AM
**To:** 'memanely@mindspring.com'
**Subject:** File

Mike,

After reading your may 4th letter, I have decided it would probably be best if you mailed my file to me.

I don't know if I would describe it as a "staggering case of fear" but after reading your letter, I must admit that I am a little apprehensive about coming to your office.

Considering the position you have put yourself in, it's understandable that you may be extremely agitated, and I have no desire to become engaged in a physical confrontation with you, and quite frankly, I found the tone of your "Please do come in at 1:00 today to retrieve your file" a bit threatening.

While I indicated that I would like to be able to pick it up anywhere from one o'clock on, your response seemed to have more of a "come right at 1:00 and I'll be waiting for you, buddy…" tone to it, and again, it sounds a bit threatening.

I do appreciate you firming some things up with that letter, though; it will be of great help to me.

I am also faxing this to you. There are one or two recent emails I sent that you did not send the read receipt on, and I have to assume you'll try to say you didn't get them.

Thanks,

Jim

EXHIBIT "F"

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| James D. Cunningham,<br><br>Plaintiff,<br><br>v.<br><br>Murriel M. Whitener, Shawn Whitener, Whitener Limited Partnership, Gaye M. Whitener, Whitener Management & Consulting, LLC, Whitener Enterprises, LLC, Whitener Holdings, LLC, Whitener Investment Limited Partnership, The Whitener Group, Inc., Anna Marie Dickerson, Jim Alexander, Helen Lynch, Jenny Pruitt Associates, Home Services of America, Inc. Berkshire Hathaway, Inc., Elaine Hayes, David Thomas, Lee A. Finch, REMAX International, Inc., REMAX of Georgia, REMAX Greater Atlanta Commercial, LLC, Garvis L. Sams, Jr., Joel L. Larkin, Parks F. Huff, Richard A. Harrah, Michael P. Pryor, Sams Larkin & Huff, LLP, Scott Johnson, Darryl R. Moss, Seth Weissman, Christina Kearney, Erin Chen, Jane Hedgepeth, Quiona Blanks, Leigh M. Wilco, Linda Bryant Curry, George E. Nowack, Jr., Weissman, Nowack, Curry & Wilco, PC, Scott A. Cochran, Johnny A. Cochran, H.G. Snipes, Cochran, Camp & Snipes, LLC, J. Doe I,<br><br>Defendant. | FILED IN CHAMBERS<br>THOMAS W. THRASH JR.<br>U.S.D.C. Atlanta<br>APR 12 2005<br>LUTHER D. THOMAS, Clerk<br>By: [signature] Deputy Clerk<br><br>CIVIL ACTION NO.<br>1-04-CV-3427 |

F-1

# CONSENT ORDER

Plaintiff and Defendants Murriel M. Whitener, Shawn Whitener, Whitener Limited Partnership, Gaye M. Whitener, Whitener Management & Consulting, LLC, Whitener Enterprises, LLC, Whitener Holdings LLC, Whitener Investment Limited Partnership, and the Whitener Group, Inc. having consented, it is hereby ORDERED that the time within which Defendants Murriel M. Whitener, Shawn Whitener, Whitener Limited Partnership, Gaye M. Whitener, Whitener Management & Consulting, LLC, Whitener Enterprises, LLC, Whitener Holdings LLC, Whitener Investment Limited Partnership, and the Whitener Group, Inc. may respond to the Complaint, which is presently due on April 12, 2005, is hereby extended through and including April 22, 2005.

SO ORDERED this 12 day of April, 2005.

Thomas W. Thrash
Honorable Thomas W. Thrash, Jr.
Judge, United States District Court

CONSENTED TO BY:

Michael E. Manely
Georgia Bar No.: 468580

**THE MANELY FIRM, P.C.**
7 Atlanta Street, Suite C
Marietta, GA 30060
770-421-0808
*Counsel for Plaintiff*

F-2

Filed In Office May-16-2005 09:28:36
05-1-0326-CV
Page 1

Exhibit "G"

Jay C. Stephenson
Jay C. Stephenson
Clerk of Superior Court Cobb County

IN THE SUPERIOR COURT OF COBB COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| JAMES D. CUNNINGHAM, | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION FILE NUMBER 05-1-0094-42 |
| CITY OF SMYRNA, | ) | |
| Defendant | ) | |

ORDER

It appearing that Plaintiff having terminated counsel's services,

IT IS HEREBY ORDERED AND ADJUDGED

that The Manely Firm, P.C. is no longer counsel for Plaintiff in the above-referenced matter. All future communication should be made through Plaintiff unless otherwise notified.

SO ORDERED this 16 day of May, 2005.

Judge Adele L, Grubbs
Superior Court of Cobb County

CERTIFICATE OF SERVICE

This is to certify that on June 16, 2005, I served Defendants the within and forgoing Motion for Court to Force the Manely Firm, P.C. to Produce Plaintiff's File, by placing a true and correct copy of the same in the United States Postal Service Mail, with first-class postage affixed thereto, properly addressed as follows:

Joshua Archer
Balch & Bingham
14 Piedmont Center, Ste 1100
3535 Piedmont Rd, NE
Atlanta, GA 30305

James D. Cunningham Pro se
PO Box 878
Smyrna, GA 30081-0878